Now, the next case to be argued is Durall v. Quinn, and for the appellant, we have Mr. Steve Witchley, and for the appellee, Rhonda Larson. We welcome both of you. Good morning. My name is Stephen Witchley, and I represent Robert Durall in this appeal. So, may it please the court, Mr. Durall is serving a 47-year sentence for first-degree murder. During jury deliberations in his case, a court security officer made disparaging statements to a deliberating juror, statements not only about Mr. Durall's credibility, but also about the ultimate issue of guilt in the case. Now, there's no question that the State court in this case did not apply any presumption of prejudice to this improper contact. The State court did not cite to or mention Maddox, Remmer, Turner, Parker, or any of the other Federal cases that talk about a presumption of prejudice. The key question, or at least the first key question this Court needs to decide is, does the presumption of prejudice apply in Mr. Durall's case based on this improper contact? But even if there was error in that regard, don't we look at the effect of the error, and aren't we not aided by the evidentiary hearing that the Superior Court conducted, in which it found that there was no harm from whatever the statements were, but out of an abundance of caution, the juror was excused and the jury, and an alternate was empaneled and the jury was told to start deliberating all over? Sure. I mean, I think the Court has to consider that. I will say the trial court did not say that there was no harm. The trial court found the juror in a single sentence said the juror is credible, and then did say in abundance of caution that the juror should be replaced. And I think the replacement of the jury is but one factor that this Court has to consider in determining whether or not the State has met the heavy burden that it faces in overcoming the presumption of prejudice. Are you asking us on Federal Habeas Review for a per se rule that would liken this to structural error, such that the only resolution is a new trial? No. So if you're not asking for that, then why not? The procedure seemed to be fairly cautious in that first, you know, asking the potentially, I guess it's Mr. Bidos, what effect it had on him outside the presence of all the jurors, then an abundance of caution removing him, then next talking to all of the other jurors individually and determining whether they had in any way been affected, making credibility findings on that, and then starting all over again. Why doesn't that overcome the presumption of prejudice? And if you say it doesn't, I think you're also asking for an evidentiary hearing. What would that evidentiary hearing, what are you going to show us in that, other than what we already have? We aren't asking for an evidentiary hearing on this claim because we think the court can determine from the record that the presumption of prejudice has not been overcome based on the evidence that was introduced. How can we do that if you're not asking for a structural error approach to it? Well, because I think this Court de novo can weigh whether or not the evidence that is in the record, you know, is of such a weight as to meet the State's heavy burden to overcome this presumption. What is the evidence that you suggest contradicts the various evidence that Judge Callahan noted, you know, as opposing a presumption? Why would, what evidence should we look at that would lead us to think that an inference of prejudice hasn't been rebutted by what the district court did? Well, I think two things. One is, you know, an actual examination of what occurred, and I don't think that the State court, either the trial court and certainly not the State appellate court, actually did that. I mean, what we have here is a pretty egregious contact by a court, by a uniformed court security officer making statements that go directly to the heart of Mr. Durrell's defense. And I recognize that. But once the judge talks to all the other jurors and then puts a new juror, an alternate on, you know, what is there that would lead us to think that he didn't get a fair hearing then? Now, I noticed that they didn't spend a lot of time after that. I don't think the jury, that was about the only thing that I saw on your side of that. Well, here's the problem, I think. On these particular facts, with the timing of the events as they occurred, I don't believe that the trial court or the State appellate court reviewing the trial court's decision would have any choice under these specific facts but to order a new trial. I think my answer would be different. So your answer has to be that it's structural. That's why I'm surprised that you backed away from it. Well, the reason I say it's not structural is because if this contact, if the identical contact had occurred prior to the start of deliberations and the juror was removed and replaced before deliberations started, I don't think I would have an argument. But how is that different from instructing the jurors after the alternate is empaneled to begin deliberations anew? Well, the problem is, is that Mr. Vito, the juror in question, had been in the jury room deliberating with the jurors who remained for a period of half a day, from the time the contact occurred until the time there was actually a hearing before the court. So your argument is that that introduced a taint that cannot be cured by empaneling an alternate. Therefore, it's structural, and the only solution is to order a new trial. I think that there is a prejudice there that cannot be measured or ascertained with any degree of certainty. Is there a United States Supreme Court case that would tell us that this is structural error and that it would be error for the state courts to conclude on the face of the record that there was insufficient proof of harm? Well, certainly Turner treats the error there as structural. But in this case, I'm not saying that the state court unreasonably applied Supreme Court precedent. Their decision is simply contrary to it. They didn't even recognize that there was a presumption of prejudice. There was never a weighing whatsoever. So while the court made findings, the court didn't say, I have this presumption of prejudice. It has been overcome by this. What sort of credibility, if you're not going to, I mean, you kind of have to back off the structural. It's catch-22 for you. If it was structural, then that's how you win. But you don't have any Supreme Court precedent to say that. So I understand that Judge Tolman's got you in a pretty good cross-examination. Damned if you do, damned if you don't. It's an okay job. But looking at what the trial court did, and there's some findings that the court made, right? In terms of, so how do we get around those? Because if we want to go on that it's so tainted it, but then you have all these people that the trial judge says that, well, I believe them, and I believe that this is what, you know, so how do we, and we're not there looking at these people right now. We're not evaluating Mr. Vidos. We're not evaluating whether we believe the other jurors. Well, I mean, first of all, I think. We've got to give some deference to that. With all respect to the court, I think you're overstating the degree of findings that were entered by the trial court. Regarding Mr. Vido, after Mr. Vido was removed, the day after he'd been questioned by the court and by the attorneys, sort of as an afterthought, the judge says, oh, and by the way, Mr. Vido is credible. What the court didn't do was. . . Well, tell me then what any of the other jurors said that we can hang our hat on. What did any of the other jurors say that they knew about this conversation, or it affected them, or what do you have there? It's clear that the other jurors did not know about the conversation. I mean, that's a fact in the record, or that's not disputed. You know, the problem is. . . Then let me ask you this. If it's clear that they didn't know about what the guard said, then is the idea just that they're tainted because Mr. Vido would have advocated things when they deliberated, or what? I'm sorry, I didn't hear the end of your sentence, Your Honor. Is the idea that they're tainted because Mr. Vido, when he deliberated, should be presumed to have advocated guilt or something like that? Yes. I mean, that is essentially what I'm saying. Mr. Vido could taint the rest of the deliberating jurors after this improper contact without ever saying, this guy said X, Y, and Z to me down at the metal detector. What I hear you arguing for is a conclusive presumption that's non-rebuttable. No, that is not what I'm arguing for. What I'm saying is that on the facts of these cases. . . You're asking us to presume that there was a breach here. And then the question is, was there harm? And we've asked you several ways, well, what evidence do you have that would allow us to conclude that the Superior Court was wrong in proceeding the way that it did? And you keep coming back to, well, the presumption, the presumption. And that sounds to me like an irrebuttable presumption, that in the absence of anything else, we have to conclude that there must have been prejudice. I don't think the State overcame the burden on this record, no. And the trial court did not apply the correct legal standard, nor did the appellate court in the first instance. So, I mean, there was no one ever applied. . . No one ever said, oh, the threshold has been crossed. But the state of the record is testimony which is unrefuted, which the trial court says it believed. And we may not be bound by that factual finding, but we can look at the transcript of what the jurors said. And the jurors said, I didn't talk about this to any of the other jurors, and it didn't influence my own deliberations. And then we replace that juror and tell the other jurors to start anew. I just don't see how we can conclude that there must have been harm unless it is either structural error or an irrebuttable presumption of harm. I'm saying that the presumption in this case, given what was said to the juror and who said it and the circumstances under which it was said, raises a presumption of sufficient strength that there would have to be some pretty overwhelming evidence to overcome it. And that's not just my opinion. I mean, this is what the court talks about in Remmer and in Maddox and in Turner. Is there any evidence in the record of what rule this juror, veto, whatever, what rule he took in the deliberations before the trial was stopped? Well, there isn't. And under Washington law, it's prohibited to even inquire into that because it adheres in the verdict. So the court would not even have been allowed to ask those sorts of questions of either Mr. Vito or the other jurors. I mean, that's one of the problems with trying to evaluate, you know, prejudice in the jury room when the person is communicated with during the course of the deliberation itself. And that's another reason why I say that this could have been, and this is why I'm resisting the structural error statement, is that this could have been cured had it occurred at a different time prior to the commencement of deliberations. But if it can't be cured mid-deliberations, then by definition it's structural error, isn't it? If it is incurable. That's what a structural error is. Well, a structural, yeah. It is. If it happened, game over. Game over. Nothing that can be done to repair it other than order a new trial and start all over again. I think, I guess when I think of structural error, I think it applies to this, you know, this is the rule in, you know, for this broad set of cases. What I'm saying is that the presumption, it would be very difficult to overcome the presumption of prejudice on these facts given the timing of the contact and the content of the contact. You know, I don't think you can ignore, you know, all the factors that this court. Can you state like a hypothetical set of facts that could be in evidence that would overcome the presumption at that state of the trial after they'd started deliberations? I could if. Test your theory. Give me an example of a set of facts that you would say, yes, if X, Y and Z had been done or if we knew X, Y and Z, we would say the presumption was overcome. I think if the actual contact had been different, I think that would have. Given this contact. Okay, you want to keep that fact. A court security officer saying he's a murderer, you know. All right. So everything is the same. Is there anything the trial judge could have done at that point? What evidence could you state hypothetically that would overcome the presumption? Because it seems to me if you can't give like a set of facts that would do that, then I have to agree with Judge Tallman's observation that you're really saying at that point it's irrebuttable presumption or structural. I think that given what this. So I'm not going to be able to give. If you're not letting me change the initial facts regarding the contact and the nature of the individual who made the contact and what was said to that juror and when it occurred during deliberations, I'm not able to give you a hypothetical. Because I think the court had said. You're saying that generic, if you could change the facts, you could state a case with that generic kind of contact mid-deliberation, that would be rebutted. Is that what you're saying? I'm sorry. I didn't understand that question. Are you saying if you could alter the facts somewhat but still leave an improper contact with a juror in the middle of deliberations, that you can see where a presumption would be rebutted? Yes. But I can't see it being rebutted on these facts when an official person communicates to a juror during deliberations the defendant is a liar and he's guilty. So that has to be irrebuttable and it has to be structural. I think you have to say yes, even though I'm not sure the law will support your position. Let me see if I can help you with Judge Gould's question, and I'm not sure this does, but I'm going to ask your opponent this question as well. Suppose that rather than excusing juror veto, the court had conducted the hearing that it did, entered the findings that it did, and then essentially denied the motion for mistrial and allowed veto to continue deliberating and the jury to return a verdict. I think in that case, based on this record, you would have a much stronger argument for reversal without having to clarify the error as structural in light of the argument that the trial court judge misunderstood. I think you could get some votes on the Ninth Circuit with that. Yeah. But I think what really matters here is what the trial court did, which is to excuse veto, impanel the alternate, and then tell the jury to start deliberating all over again. And that's what makes it hard for me to say if it's not an irrebuttable presumption that the state didn't need its burden approved on this record. You know, one thing that comes to mind, Your Honor, while you're talking about that is, you know, I do think it's significant that the reconstituted jury, which is supposed to begin deliberations anew, rendered a guilty verdict in two hours. I think that this is how I'm going to try to get around this structural error. Are you pretty sure the first verdict wasn't a not-guilty verdict? Are you pretty sure of that? Well, of course, in a hyper-technical sense, no, I'm not sure. Am I sure in my heart? Yes, I'm sure. Let me ask you to refine one point for me. I realize there's some barriers to the judge inquiring about what goes on in the jury room. But once he's removed Vito, once that juror's taken off the jury and there's going to be an alternate, could the judge have made a record of what Vito had done in the jury room? Could he have inquired, once he takes Vito off the jury, could there be testimony about what Vito said when he was in there? You mean by inquiring of Mr. Vito himself? Right. I don't know of anything that would prohibit the trial court from doing that. I know that the trial court would be extremely reluctant to intrude upon the jury in a deliberative process in that way. I don't know of any judges who actually would do that, although I don't know of any court rule that says they can't. The normal practice would be to excuse Mr. Vito and tell him that he's not relieved of the obligation of secrecy until after the jury has announced its verdict, right? Yeah, that's correct. We're well, you know, we're double the time. We're 10 minutes over time, but we've been drawing you out on this. I think we should bring this to a close. We'll give you one minute for rebuttal if you need it. Oh, thanks. Ms. Larson, since we gave your colleague so much time to indulge our curiosity, if you need more than your 10 minutes, we'll add a couple of minutes to your time. Okay. Thank you, Your Honor. May it please the Court, my name is Rhonda Larson, Assistant Attorney General for the Respondent. The State Court reasonably denied Mr. Durrell's jury tampering claim and his other two claims. There is no presumption of prejudice in this case. Mr. Durrell's opening brief and reply. Well, it's not a tampering, but it's certainly, this is not that, you know, for those of us that were trial lawyers and were trial judges, I mean, this is a pretty bad contact. I mean, it doesn't, you know, in terms of, it's not like people accidentally ran into each other in the hall or said, oh, you're a juror, or, you know, gave some sort of knowing glance. I mean, this is someone that works in the, you know, works at the courthouse and, you know, seems to have some sort of authority and talks about the defendant lying and knows the person's a juror. And it isn't maybe as bad as the other case where it said, you know, he's killed three other people, but he might as well have. Yes, Your Honor, that's true. It was, the contact was pretty egregious. However, it was taken care of by the trial court. Ms. Durrell's how you would say that if there was a presumption of prejudice, you would argue that that was overcome by virtue of what we said. But it certainly doesn't, you know, it's difficult to put this in a minimal, you know, it isn't like paying jurors off, no. But it really definitely goes to the heart of things. Respondent would disagree respectfully, Your Honor. Mr. Durrell's claim of prejudice is pure speculation. And that is based on three degrees of attenuated conjecture. He hypothesizes that first, Mr. Vito's exposure to the security guard's comments affected Mr. Vito's. Second, that this possible effect may have resulted in Mr. Vito's making statements. Well, I'm not disagreeing with you so much on whether you overcome the presumption of prejudice, but the first thing is you have to analyze the nature of the contact, whether, you know, is there a presumption of prejudice because the contact was so egregious? That's right, Your Honor. You're saying no. Exactly, because it's too attenuated. So you've got that second level that they must have tainted the opinions of the other jurors during the second deliberation, even though Mr. Vito was absent during the second deliberation. That's the third level. So there's just too many hypotheses. Ms. Larson, let me. I tend to agree with what Judge Callahan has said, so I'll let you know my thoughts just to inform your argument. Okay, this is not like Tony Soprano saying to someone, you vote not guilty or you're going to find in my uncle's trial you get a horse head on your bed. It's not that. But it's also not the kind of situation we encountered often in trial practice where the juror is in the elevator and a lawyer gets in the elevator with the juror or there's some casual comment made. So it seems to me a pretty serious contact. Now, therefore, I'm inclined to feel that there is a presumption of prejudice that the Court of Appeals didn't recognize. But then the question is, did the series of acts by the trial court overcome the presumption? It seems to me your argument about the inference of did what he said affect the other jurors later goes to that issue, whether a presumption of prejudice is overcome. That's right, Your Honor. I think the egregiousness of the contact is analyzed by the contact, not by the attenuation. That the attenuation goes to how you overcome the presumption. That's right, Your Honor. I wouldn't disagree with that either. But I would like to focus on the fact that this presumption of prejudice has not clearly established Supreme Court precedent. This Court in Caliendo put forth the presumption of prejudice rule. And as recently as last year, this Court has applied the Brecht standard, the Brecht harmless error standard on habeas review, where the claim was that the jury had improperly considered extrinsic evidence. And as you know, that was in Fields v. Brown in 2007, an en banc decision. And in that case, as you recall, the trial court had not removed the juror. Here the trial court replaced the juror, and new deliberations began. So even if this Court – so if this Court in Fields applied the Brecht standard, that standard certainly applies here. Okay. So let me ask you the same question I asked Mr. Witchley. Okay. You know what's coming. Had the trial judge simply conducted a hearing, denied the motion for mistrial, told the jury, present your verdict, would you agree under the state of the law that we would have to grant habeas relief? I would not agree, Your Honor. In Fields, as I said, there was a situation where the juror was not removed. And in that case, the presumption of prejudice – the Brecht harmless error standard did overcome. Additionally, Supreme Court case law is clear here that due process does not require a new trial every time a juror has been placed in a compromising position. But it gets – Ms. Larson, it gets a little tricky, as only Federal habeas law can get. If we conclude that the state courts on review applied an improper standard of review, then AEDPA presumption of correctness and the fact-finding deference that we are to apply on Federal habeas review is set aside. And the Supreme Court tells us we must then look independently at the record in order to determine whether Federal constitutional rights were violated. Am I correct, Your Honor? De novo review is not applicable even in that situation. There is still a deference given under AEDPA, regardless of whether the state court specifically used the correct United States Supreme Court case in its opinion. The state courts are not required to say specifically X, Y, Z in their opinions. It's – what is looked at is whether the result was contrary to or unreasonable application of Supreme Court precedent. It's the result. If there are no further questions, the State asks this Court to affirm the district court's denial of Mr. Durrell's habeas petition. Okay. I have no further questions, Dick. I think you're fine. All right. Mr. Wichler, we gave you a harder time. We'll give you one more minute if you want it. Yeah, I'll forgo that 60 seconds unless the Court has additional questions. And we might get back to that structural error. Yeah. Okay. Well, you both did a nice job in your arguments, and we appreciate it. So thank you. Thank you. Mr. Durrell shall be submitted. It was very good argument. Thank you very much. Okay. The next case on our calendar is
judges: Gould, Tallman, Callahan